Cannavan v. Conklin.

GERALD CANNAVAN *v.* EDWARD E. CONKLIN, CHARLES SCHOLEY and JAMES SHINDLER, *impleaded with* HERMAN HESDORF.

A party in the actual possession of a city pier is responsible in damages for injuries arising from its bad condition, irrespective of the question of ownership; and in suits for such damages, the possession of the defendant being shown, the question of title does not arise.

An agreement between A. and B., joint possessors of a pier, that B. shall keep it in good repair is no defence to an action against A. by a third party to recover damages for an injury arising from its defective condition.

The owners of a pier in the city of New York leased it to a third party, who agreed to keep it in as good repair as it then was, reserving to themselves a right to use and occupy as much of the pier as their business might require; and under this agreement continued to use the dock,—*Held*, that this was a joint possession, rendering them jointly liable with their lessee for the death of a horse caused by the defective condition of the pier.

APPEAL by the defendants Edward E. Conklin, Charles Scholey and James Shindler from the judgment of the District Court of the Seventh Judicial District.

The plaintiff brought suit against the defendants for the loss

of a horse by falling through a pier at the foot of Forty-third street, N. R., in the city of New York. The accident occurred on the 24th November, 1864, and was shown to have occurred through the weakness of the supporting beams, while the planking appeared to be sound. The appellants put in evidence an agreement between themselves and the defendant Hesdorf leasing the pier for seven months from October 1st, 1864, to the last of, " he to keep the said dock in good repair as it now is, the said " Conklin & Co. reserving the right to use said dock, and occupy " as much of pier as their business may require, and in case they " want to make improvements on said pier, or in any other way " occupy the whole of it, in that case they are to pay back," &c.

The appellants gave evidence on the trial below to show that they had not afterwards occupied the dock. On the part of the plaintiff it was shown that the pier was used by the firm of Conklin & Co. for the receipt of coal and ice, and, that they had scales on the dock, which remained there down to the time of the accident, and were used but a little while before by them.

The District Court rendered a judgment in favor of the plaintiff for the value of the horse, against all defendants. The defendants Conklin & Co. appealed.

*Titus B. Eldridge*, for appellants.
*Alexander H. Reavey*, for respondent.

By the Court.—Cardozo, J.—The case presents only one question worthy of consideration.

The action in the court below was to recover for the loss of a horse, which was killed on the 24th of November, 1864, by falling through the pier at the foot of 43d street, on the North River.

The death of the horse, its value, and that the loss happened by reason of the negligence of the persons in possession of the pier in suffering it to be in a dangerous and insecure condition, are sufficiently proven. The question is whether the appellants occupied that relation to the pier when the accident occurred, as to make them responsible for it.

On the first of October, 1864, the appellants entered into an agreement with their co-defendant Hesdorf, by which let unto him " their pier at the foot of 43d street, North R.

Cannavan v. Conklin.

for the term of seven months from 1st day of October inst. to May 1st, 1865, * * * * reserving to themselves the right to use the said dock, and occupy as much of the pier as their business may require."

The proof establishes that the appellants, before the making of the lease, had erected upon the pier a pair of scales for the purpose of weighing ice and coal, and that both before and after the making of the lease the appellants used the pier and the scales which they had so erected. They were, therefore, after the making of the lease, while such use continued, in the possession of the pier jointly with the defendant Hesdorf. Indeed the only one of the appellants who was examined on the trial did not attempt to deny their possession and use of the pier down to November 1st. The dispute is whether the possession of the appellants then ceased or continued and existed at the time of the loss. The accident happened on that part of the pier which has been used by the appellants. If the appellants were in possession of the pier when the accident occurred, they are clearly liable, irrespective of ownership. The agreement that Hesdorf should keep the pier in as good condition as it was when the lease was made does not affect the case. In the first place Hesdorf was only to keep it in as good condition as it was at the time the lease was made, and the pooof shows that it was in bad condition at that time, and so continued.

Hesdorf was not to put the pier in good order, but to keep it in the same condition that it was in when the lease was made; and it does not appear that it was in any worse state when the accident happened, than it was in when the lease was taken. However this may be, the undertaking of Hesdorf in that respect is a matter solely between him and the appellants, and cannot relieve the latter from their liability (growing out of their possession) to strangers. It may give them a claim for redress against Hesdorf, but that question does not arise here.

Hahn, a witness for the plaintiff, testified that on the twenty-eighth of November, 1864, which was after the accident, he had a load of coal carted from that pier to his yard; and John Wood, who weighed that coal, swore that it had been weighed with the scales which the appellants had erected. William Duane, another witness for the plaintiff, stated that at

Herrick v. Catley.

and after the accident these scales, with which he had seen the appellants weigh ice, were yet on the pier. This was some evidence to show that the appellants then continued in possession of the pier, and if it be said, that there was a conflict of testimony upon the point of possession, because one of the appellants swore that he "thought the scales had been removed about the first of November," that presented a question of fact upon which the justice's finding is conclusive. Besides, although one of the appellants swore that they had sold the pier, and had delivered a written conveyance of it, they did not produce the instrument, nor disclose its terms, nor did he swear that by the conveyance they had transferred anything except the title to the pier, and for aught that was shown, the appellants may not have parted with the right to use the pier, which they reserved by the agreement with Hesdorf. In the absence of such proof, I think that the justice was justified in concluding that the appellants were in possession of the pier when the accident occurred, and if that be so, the question of title to the pier becomes immaterial, even if the appellants were in a position to raise that point. But they are not. They did not set up any such defence by way of answer, nor give the undertaking required by § 56 of the Code, and therefore under § 58, they are precluded from raising the question of title to the premises.

I think the judgment should be affirmed with costs.

Judgment affirmed.