ONDERDONK v. SMITH and others.

*(District Court, S. D. New York.   July 26, 1884.)*

1. WHARVES AND SLIPS—OBSTRUCTIONS—SUNKEN PILE—DAMAGE TO VESSEL.
   A coal merchant having by arrangement with a railroad company, the owner, obtained the exclusive use of a wharf and of the slip adjoining, for the purpose of receiving coal upon cars of the company, and of thence selling and shipping the coal on board vessels that he procures to come to the wharf to receive it, paying the company a fixed sum, as wharfage, for all coal thus sold and shipped, is liable for the damages to such vessels occasioned by a sunken pile near the wharf, after notice of the existence of the obstruction and of its dangerous character, the vessel having been directed to move over the dangerous spot by his general superintendent.

2. SAME—LIABILITY OF OWNER AND OCCUPANT.
   The liability of the company, as owner, for the same damage, if proved, would be no defense to the several liability of the occupant of the wharf.

In Admiralty.

*J. A. Hyland,* for libelant.

*Roger M. Sherman,* for respondents.

BROWN, J.   The libel in this case was filed to recover damages occasioned by the sinking of a boat called Box No. 8, loaded with coal, at pier 2, Elizabethport, New Jersey, on November 4, 1882. There can be no doubt that the immediate cause of the sinking of the boat was her settling down with the ebb-tide, as she lay along-side the pier, upon a hidden pile, which, as it was subsequently proved, projected about a foot above the bottom of the slip, and was a foot or two outside of the face of the pier.   The evidence shows that when the boat was raised, the pile, being thrust through the bottom of the boat, held her pinned fast for a time after she first floated, until she was lifted high enough to clear the pile.   The statement of the witness Brown, who superintended the subsequent removal of the pile, that it was about 10 or 12 inches distant from the face of the pier, was but a loose estimate; he said he did not measure the distance, and could not tell exactly.   The face of the pier, moreover, was somewhat sloping, so that the use of ordinary fenders would not necessarily have carried the boat's bilge-log on top of the pile, so as to save the bottom from being penetrated.   I think there is no question, upon the evidence, that the pile was far enough from the pier to run through the bottom of the boat inside of the bilge-log where the hole was found.

The defendants, by agreement with the Jersey Central Railroad Company, the owners of the pier, had the exclusive use of the pier

for the purpose of receiving coal brought there in cars by the railroad company, and of selling the coal there, and shipping it on board vessels which were in the habit of coming along-side, by the defendants' procurement, to receive it. For this exclusive use of the pier, and of the shipping privileges in the adjacent slip, the defendants paid the company five cents a ton wharfage upon all coal sold. The company were to keep the pier in repair, and, as it would seem, the slip also. The only use of the pier that the company had was in running their cars down upon it for the purpose of making convenient delivery of the coal to the defendants for the purposes of sale and shipment by the latter, as above stated. The defendants had a building there which they occupied exclusively as an office; and they stored coal in bins on the pier. No other person had any right there. The coal that was on the boat when it was sunk had been sold by the defendants to R. H. Williams & Co., to be delivered at said pier free on board; and the last-named firm employed the boat to transport the coal. The whole management of the defendants' business there was intrusted to one Devlan, who directed the boat to its position, and, according to the testimony of the captain, told the latter that the bottom of the slip was good, and that nothing was in the way. This conversation is denied by Devlan.

It is immaterial whether the defendants were, in strictness, lessees of the pier or not. So far as the use of the pier and of the adjoining slip for the purpose of shipping coal from this wharf was concerned, they were in exclusive possession and control. It is this possession and control which are the material things, under whatever arrangement acquired. To this possession and control the law attaches a legal obligation to answer for all obstructions that are known, or might by reasonable diligence have become known, that cause damage to vessels resorting thither in the regular course of the business carried on there by those having the use of the wharf and slip. To this liability it is not essential that the defendant be in sole possession; nor is it material whether, as between the occupant and the owner, the former or the latter is bound to repair. Both may be liable, severally, for the damages, as for a tort; and the liability of the occupant follows from the fact of his possession and use, and from the duty which the law casts upon him to give notice and warning against such obstructions to persons whom he invites there, so long as the obstructions remain, provided he himself has knowledge or notice of them. *The John A. Berkman,* 6 FED. REP. 535; *Christian* v. *Van Tassel,* 12 FED. REP. 884; *Swords* v. *Edgar,* 59 N. Y. 35; *Leary* v. *Woodruff,* 4 Hun, 99; *Cannavan* v. *Conkling,* 1 Daly, 509; *Carleton* v. *Franconia, etc., Co.* 99 Mass. 216.

The evidence satisfies me that Mr. Devlan had ample notice some three weeks previous to this accident of the existence of the obstruction, and of its dangerous character. At that time another boat grounded in the same place, and sustained some injury, on notice

of which he referred its owner to the company for compensation. This notice and this knowledge bound Devlan to make a thorough examination, and to warn away all other boats from the place of the accident, or, at least, not to invite or direct them there until the obstruction was removed. This duty pertained to him as superintendent of the defendants' business. The evidence shows that the examination made by Devlan was inefficient, and apparently of a perfunctory character, with no real desire to find the obstruction. Had he wished to find it, nothing would have been easier than to call to his aid his employe, who knew just where it was, instead of saying that he would discharge the man if he knew who he was. After the previous boat had caught, and full notice of this had been given to Devlan, it is but just that any subsequent damage should be made good by him and his principals, rather than by innocent persons who moved their boats to the same place by his directions without any notice of danger. The defendants were fully represented by Devlan, and are bound by his neglect. The libelant is therefore entitled to judgment. A reference may be taken to compute the damages, and, at the same time, any further evidence desired by either party may be given as to the exact place, nature, and extent of the injury, and of the previous condition of the boat.